CHARLES T. WRIGHT, ESQ.
Nevada Bar No. 10285
PIET & WRIGHT
3130 S. Rainbow Blvd., Ste. 304
Las Vegas, Nevada 89146
*Attorney for Debtors*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re: | CASE NO.: BK-S 09-25863 LBR |
| MIER, RICHARD ANTHONY | IN CHAPTER 13 PROCEEDINGS |
| MIER, JEANNIE GAY | MOTION TO VALUE COLLATERAL |
| Debtor(s), | Hearing Date: December 10, 2009 |
| | Hearing Time: 2:30 P.M. |

**MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF WELLS FARGO HOME MORTGAGE. (ACCT. ENDING IN 0419 PURSUANT TO 11 U.S.C. 506(a) AND 1322**

COME NOW, RICHARD ANTHONY MIER AND JEANNIE GAY MIER, (hereinafter the "Debtors"), by the law firm of PIET & WRIGHT, L.L.C., and attorney CHARLES T. WRIGHT, ESQ., and moves this Court pursuant to 11 U.S.C. §506(a), and §1322, and Bankruptcy Rules 3012 and 9014 and states:

1.  Debtors filed the instant Chapter 13, Case Number 09-25863-LBR on August 27, 2009.

2.  On the Petition date, Debtor owned real property located at 2305 CASHMERE WAY, HENDERSON, NEVADA 89074 (hereinafter the "Subject Property") and was included on Schedule A of the Bankruptcy Petition. A copy of the Schedule A is attached hereto as Exhibit 1.

3.  The value of the Subject Property was appraised to be $221,000.00 at the time the instant petition was filed. A copy of the appraisal is attached hereto as Exhibit 2.

1

4.  At the time of filing the instant petition, the Subject Property was subject to a priority lien held by WELLS FARGO HOME MORTGAGE (ACCT. ENDING IN 0602) in an amount of $369,591.00 and was included on Schedule D of the Bankruptcy Petition. A copy of the Schedule D is attached hereto as Exhibit 3.

5.  Therefore, on the date the instant bankruptcy was filed, no equity existed in the Subject Property above the claim of WELLS FARGO HOME MORTGAGE (ACCT. ENDING IN 0602).

6.  WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) claim in the amount of $34,893.00 was wholly unsecured on the petition date and if Subject Property was sold at auction WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) would receive nothing.

7.  Accordingly, the Debtor request that this Court find that WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) claim in the amount of $34,893.00 is unsecured and should be reclassified as a general unsecured claim to receive pro rata with other general unsecured creditors through the Debtor's Chapter 13 Plan.

## LEGAL ARGUMENT

In *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002), the Court stated that a wholly unsecured lien holder's claim can be modified and reclassified as a general unsecured claim pursuant to 11 U.S.C. §506(a), despite the anti-modification language in § 1322(b)(2). Specifically, the Court held:

> Section 506(a) divides creditors' claims into "secured...claims" and "unsecured claims." Although the conventional interpretation of "secured" might include any claim in which the creditor has a security interest in the Debtors' property, § 506(a) makes clear that the status of a claim depends on the valuation of the property. An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value

2

> of such creditor's interest ... is less than the amount of such allowed claim.
>
> To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim." Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

Accordingly, since WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) claim in the amount of $34,893.00 is wholly unsecured (in that there is no extant equity above the first mortgage in the Subject Property), this Court should reclassify WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) claim to a general unsecured claim to receive pro rata with like unsecured creditors. WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) should also be stripped of its secured rights under State law since no maintainable security interest in the Subject Property exists.

Further, the Debtor is not required to file an adversary proceeding to achieve the requested relief herein. Debtor may bring a motion to "strip off" WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) consensual lien by motion. *See In re Williams*, 166 B.R. 615 (Bankr.E.D.Va.1994), *In re Fuller*, 255 B.R. 300 (Bankr.W.D.Mich.2000), *In re Hoskins*, 262 B.R. 693 (Bankr.E.D.Mich.2001), *In re King*, 290 B.R. 641 (Bankr.C.D.Ill.2003), *In re Millspaugh*, 302 B.R. 90 (Bankr.D.Idaho 2003), *Dickey v. Ben. Fin. (In re Dickey)* 293 B.R. 360 (Bankr.M.D.Pa.2003), *In re Hill*, 304 B.R. 800 (Bankr.S.D.Ohio 2003); *In re Sadala* 294 B.R. 180 (Bankr.M.D.Fla.2003), *In re Fisher*, 289 B.R. 544 (Bankr.W.D.N.Y.2003), *In re Robert*, 313 B.R. 545 (Bankr.N.D.N.Y.2004), *In re Bennett*, 312 B.R. 843 (Bankr.W.D.Ky.2004).

WHEREFORE, Debtor prays that this court:

1. Find that WELLS FARGO BANK NV NA (ACCT. ENDING IN

3

1998) is not a holder of a lien on the Subject Property;

2.    Immediately avoid: "Strip off", cancel and extinguish WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) wholly unsecured claim/lien in the amount of $34,893.00 from the Subject Property pursuant to 11 U.S.C. Section 506(a);

3.    Reclassify WELLS FARGO BANK NV NA (ACCT. ENDING IN 1998) claim in the amount of $34,893.00 as general unsecured claim to be paid pro rata with other general unsecured creditors through the Debtor's Chapter 13 Plan;

4.    Such other relief the Court finds appropriate.

DATED this 19th day of November, 2009.

                                          Respectfully submitted,

                                          PIET & WRIGHT

                                          By: /s/ Charles T. Wright
                                                CHARLES T. WRIGHT, ESQ.
                                                Nevada Bar No. 10285
                                                3130 S. Rainbow Blvd., Ste. 304
                                                Las Vegas, Nevada 89146
                                                *Attorney for Debtors*

# Exhibit 1

B6A (Official Form 6A) (12/07)

In re   **Richard Anthony Mier,**
        **Jeannie Gay Mier**

Case No. __09-25863__

Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 2305 Cashmere Way, Henderson, Nevada 89074 Single Family, 4 bedrooms, 3 bathroom, 2,783 sqft | | J | 221,000.00 | 404,484.00 |

Sub-Total >     221,000.00     (Total of this page)

Total >     221,000.00

__0__  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

Exhibit 2

Vegas Valley Appraisals

File No. 763B2305
Case No.

# Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| Field | Value |
|---|---|
| Property Address | 2305 Cashmere Way |
| City | Henderson |
| State | NV |
| Zip Code | 89074 |
| Borrower | MIER |
| Owner of Public Record | MIER |
| County | Clark |
| Legal Description | Green Valley South RS-6 #7 Plat Book 82 Page 83 Lot 13 Block 2 |
| Assessor's Parcel # | 178-07-617-053 |
| Tax Year | 2010 |
| R.E. Taxes $ | 2,527.13 |
| Neighborhood Name | Green Valley South |
| Map Reference | Metro Map 76-B3 |
| Census Tract | 0053.13 |
| Occupant | [X] Owner [ ] Tenant [ ] Vacant |
| Special Assessments $ | N/A |
| [X] PUD  HOA $ 25.00 | [ ] per year [X] per month |
| Property Rights Appraised | [X] Fee Simple [ ] Leasehold [ ] Other (describe) |
| Assignment Type | [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Market Value |
| Lender/Client | Piet & Wright  Address 3130 S. Rainbow Blvd #304, Las Vegas, NV 89146 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offerings price(s), and date(s). According to the Property Archive Information the subject property was not listed for sale in the last twelve months.

### CONTRACT

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ ____  Date of Contract ____  Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s) N/A
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location: [ ] Urban [X] Suburban [ ] Rural | Property Values: [ ] Increasing [ ] Stable [X] Declining | PRICE $(000) / AGE (yrs) | One-Unit 75% |
| Built-Up: [ ] Over 75% [X] 25-75% [ ] Under 25% | Demand/Supply: [ ] Shortage [ ] In Balance [X] OverSupply | 100 Low / 5 | 2-4 Unit __% |
| Growth: [ ] Rapid [ ] Stable [X] Slow | Marketing Time: [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 300 High / 20 | Multi-Family 05% |
| | | 250 Pred. / 10 | Commercial 10%  Other v.land 10% |

Neighborhood Boundaries: The subject's market area is bounded to the North by Warm Springs Rd, to the East by Green Valley Pkwy, to the South by Windmill Pkwy, and to the West by Pecos Rd.

Neighborhood Description: The subject neighborhood is comprised mostly of conforming tract style single family residences with average to good construction quality. Schools, shopping, parks and other support facilities are located nearby. Freeway access and major arterials are close and convenient. Major employment centers are located within a 10-15 mile radius from the subject. Average market appeal is noted due to the general condition and construction quality of homes as well as proximity to local area amenities.

Market Conditions (including support for the above conclusions): According to the latest report by University of Las Vegas Center for Business and Economic Research, "Locally, the consensus seems to be that an adjustment is taking place, but growth will continue to generate enough demand to forestall a major ubiquitous price decline in Clark County."

### SITE

| Field | Value |
|---|---|
| Dimensions | 60.07 X 100.00 |
| Area | 6,007 SF |
| Shape | Rectangular |
| View | Residential |
| Specific Zoning Classification | RS-6 |
| Zoning Description | Single Family Residential |
| Zoning Compliance | [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | X | | Water | X | | Street  Asphalt | X | |
| Gas | X | | Sanitary Sewer | X | | Alley  None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X  FEMA Map # 32003C2590 E  FEMA Map Date 09/27/2002
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.
There are no adverse site conditions or external factors.

### IMPROVEMENTS

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls  Concrete/Avg | Floors  Tile/Carpet/Avg |
| # of Stories 2 | [ ] Full Basement [ ] Partial Basement | Exterior Walls  Frm. Stucco/Avg | Walls  Drywall/Avg |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area  None  sq. ft. | Roof Surface  C. Tile/Avg | Trim/Finish  Standard/Avg |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish  None  % | Gutters & Downspouts  Partial/Typical | Bath Floor  Tile/Avg |
| Design (Style)  2 Story | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type  Dual Pane/Avg | Bath Wainscot  Tile/Avg |
| Year Built  2000 | Evidence of [ ] Infestation  None | Storm Sash/Insulated  None | Car Storage [ ] None |
| Effective Age (Yrs)  5 | [ ] Dampness [ ] Settlement | Screens  1/2 Screens/Avg | [X] Driveway  # of Cars 3 |
| Attic  [X] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities | Driveway Surface  Concrete |
| [ ] Drop Stair [ ] Stairs | [ ] Other  Fuel  Gas | [X] Fireplace(s) # 1  [X] Fence Blockwall | [X] Garage  # of Cars 3 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck Latice [ ] Porch  Cov. Entry | [ ] Carport  # of Cars __ |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [ ] Other | [ ] Att. [ ] Det. [X] Built-in |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [X] Washer/Dryer [ ] Other (describe)
Finished area **above** grade contains: 9 Rooms  4 Bedrooms  2.75 Bath(s)  2,783 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.)  None

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). The subject property is in overall average condition with no repairs necessary evident at the time of inspection. No external obsolence noted at inspection. Physical depreciation noted at inspection. Physical depreciation was calculated using the age life method and includes the appraiser's observations, noting recent upgrades, condition and improvements.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe.
The appraiser only performed a visual inspection of accessible areas and that the appraisal cannot be relied upon to disclose conditions and/or defects in the property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe.

Vegas Valley Appraisals

File No. 763B2305
Case No.

## Uniform Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE #1 | | COMPARABLE SALE #2 | | COMPARABLE SALE #3 | |
|---|---|---|---|---|---|---|---|
| Address | 2305 Cashmere Way, Henderson, NV 89074 | 2535 Kinnard Avenue, Henderson, NV 89074 | | 2217 Midvale Terrace, Henderson, NV 89074 | | 2409 Goshen Avenue, Henderson, NV 89074 | |
| Proximity to Subject | | 0.64 miles SW | | 0.38 miles SE | | 0.48 miles SW | |
| Sale Price | $ | $ 230,000 | | $ 242,000 | | $ 235,500 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 82.64 sq. ft. | | $ 93.69 sq. ft. | | $ 81.69 sq. ft. | |
| Data Source(s) | | MLS#907599, Tax Records | | MLS#803322, Tax Records | | MLS#944076, Tax Records | |
| Verification Source(s) | | Doc.#20090501:02705 | | Doc.#20090629:01899 | | Doc.#20090806:02648 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | DOM - 51, Conv | | DOM - 55, FHA | | DOM - 28, Conv | |
| Concessions | | Seller Contrib. | 0 | Seller Contrib. | -8,000 | Seller Contrib. | 0 |
| Date of Sale/Time | Time Adjustments | 05/01/2009 | -2,000 | 06/29/2009 | -2,000 | 08/06/2009 | 0 |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,007 SF | 6,542 SF | 0 | 6,000 SF | 0 | 6,420 SF | 0 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | 2 Story | 2 Story | | 2 Story | | 2 Story | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 9 yrs | 9 yrs | | 11 yrs | +2,000 | 12 yrs | +3,000 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 9 / 4 / 2.75 | 9 / 4 / 2.75 | | 7 / 4 / 2.50 * | * see comments | 8 / 4 / 2.75 | |
| Gross Living Area | 2,783 sq. ft. | 2,783 sq. ft. | 0 | 2,583 sq. ft. | +5,000 | 2,883 sq. ft. | 0 |
| Basement & Finished Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/Cent Ht/AC | FWA/Cent Ht/AC | | FWA/Cent Ht/AC | | FWA/Cent Ht/AC | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 3 Car Garage | 3 Car Garage | | 3 Car Garage | | 3 Car Garage | |
| Porch/Patio/Deck | Ext. Amenities | Inferior | +3,000 | Similar | | Similar | |
| Fireplaces | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Fence, Pools, etc. | No Pool | Pool | -10,000 | No Pool | | No Pool | |
| Interior Upgrades | Upgrades | Similar | | Similar | | Similar | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -9,000 | [ ] + [X] - | $ -3,000 | [X] + [ ] - | $ 3,000 |
| Adjusted Sale Price of Comparables | | Net Adj: -4% Gross Adj: 7% | $ 221,000 | Net Adj: -1% Gross Adj: 7% | $ 239,000 | Net Adj: 1% Gross Adj: 1% | $ 238,500 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) MLS, Tax Records, Clark County Assessor's Office.
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) MLS, Tax Records, Clark County Assessor's Office.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No prior sale within 3 years | 08/26/2008 | No prior sale within 1 year | 04/29/2009 |
| Price of Prior Sale/Transfer | N/A | $285,000 FRCLSR | N/A | $270,000 FRCLSR |
| Data Source(s) | MLS, Tax Records | MLS, Tax Records | MLS, Tax Records | MLS, Tax Records |
| Effective Date of Data Source(s) | 09/25/2009 | 09/25/2009 | 09/25/2009 | 09/25/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject property is not known to have been sold or listed for sale within the previous three years. There are no model matches or similar properties closed within the last 6 months in the subject development, therefore, all Comparable Sales used are from the immediate market area. Comparable Sale No. 1 is a model match to the subject property while Comparable Sales No. 2 and 3 are similar properties. All closed comparables are closed sales within the last six-months with the exception of Comparable Sale No. 4 which is currently pending close of escrow.

Summary of Sales Comparison Approach  All comparable sales used were chosen on the basis of their similarity to the subject property in terms of age, size, design, utility, and the overall character of the subject's market area. Most emphasis is placed on Comp. 1 which is a model match and the most similar to the subject property with regard to the most significant aspects. They provide substantial support to this analysis. After a thorough search of the general market area, all comparables used were considered to be the best available and were felt to provide a reliable indication of value. All of the Comparable Sales are located in the subject's competitive market area. Positive and negative adjustments of the Comparable Sales were required in areas of dissimilarity to produce the best indicated value of the subject. Subject competes well with similar sized and aged homes in this area. Adjustments were based on data extracted from the area market, conversations with builders, real estate agents, appraisers and other real estate professionals active in this market area, and are reflective of the probable actions of informed buyers. All adjustments, therefore, are based on the market's reaction to each individual item and not to actual cost.

Indicated Value by Sales Comparison Approach $ 221,000

Indicated Value by: Sales Comparison Approach $ 221,000    Cost Approach (if developed) $ 0    Income Approach (if developed) $ NOT DEV

Greatest weight is given to the Sales Comparison Approach, the Cost Approach loses reliability as age and depreciation increase and, therefore, was excluded from this analysis. The subject is located in an area of, primarily, owner occupied single family residences. For this reason, the Income Approach was not considered a meaningful approach to value and was, therefore, excluded from this analysis.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No Conditions

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 221,000 , as of 09/25/2009 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70  March 2005                                                                                                     Fannie Mae Form 1004  March 2005

Vegas Valley Appraisals

File No. 763B2305
Case No.

## Uniform Residential Appraisal Report

| Comparable Adjustment Analysis |
|---|
| Financial Concessions: Financial Concessions in the form of seller points paid have been adjusted accordingly. |
| Site Size: The adjustment for site size between the comparable and subject properties is based on $1,000 per thousand square feet, beginning at a difference of approximately one-thousand square feet. This figure is then rounded to the most appropriate whole number. |
| Age: The differences in age between the comparable sales and the subject property were adjusted at $1,000 per year, based on actual age. The amount adjusted was based on the reaction of typically informed buyers. |
| Bathroom Count: Bathroom counts provide appropriate and similar utility to all properties within this analysis, based on their respective square footage. For this reason, no adjustments were necessary. |
| Gross Living Area: The differences in Gross Living Area between the comparable sales and the subject property were adjusted at a rate of $25.00 per square foot, beginning at a difference of one hundred square feet, then rounded to the most appropriate whole number. The amount adjusted per square foot, as noted above, represents the market's reaction to homes of this quality. |
| Exterior Amenities: The exterior amenities of both the subject property and the comparable sales were adjusted as a whole, which considers fencing, landscaping, porches, patios, etc. Comparable Sale No. 1 was considered inferior. The amount adjusted reflects market reaction to the varying degrees of exterior amenities of each comparable sale as they relate to the subject property. |
| Pool: Relative sales data in the subject's area indicate that the contributory value of a typical pool is approximately $10,000. This figure was applied to the comparable sales as warranted. |

UPGRADED FEATURES

Exterior:
Front and Rear Landscaping, Latice Patio, Covered Porch.
Interior:
Two Tone Paint, Wood Railings, Tile Flooring, Corian Kitchen Countertops, Recessed Lights, Four Ceiling Fans.

### COST APPROACH TO VALUE (not required by Fannie Mae.)

Provide adequate information for the lender/client to replicate your cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| ESTIMATED  REPRODUCTION OR  REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | |
|---|---|---|---|
| Source of cost data | Dwelling  2,783  Sq. Ft. @ $ | =$ | 0 |
| Quality rating from cost service    Effective date of cost data | Sq. Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Garage/Carport  647  Sq. Ft. @ $ | =$ | 0 |
| | Total Estimate of Cost-new | =$ | 0 |
| | Less  Physical 0  Functional  External | | |
| | Depreciation  0    0    0 | =$ ( | 0 ) |
| | Depreciated Cost of Improvements | =$ | 0 |
| | "As-is" Value of Site Improvements | =$ | |
| Estimated Remaining Economic Life (HUD and VA only)   Years | Indicated Value By Cost Approach | =$ | 0 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae.)

| Estimated Monthly Market Rent $  N/A   X Gross Multiplier   N/A   =$   NOT DEV   Indicated Value by Income Approach |
|---|
| Summary of Income Approach (including support for market rent and GRM) |

### PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowner's Association (HOA)?   Yes X No   Unit type(s) X Detached   Attached |
|---|
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. |
| Legal Name of Project |
| Total number of phases   Total number of units   Total number of units sold |
| Total number of units rented   Total number of units for sale   Data source(s) |
| Was the project created by the conversion of existing building(s) into a PUD?   Yes   No If Yes, date of conversion. |
| Does the project contain any multi-dwelling units?   Yes   No   Data source. |
| Are the units, common elements, and recreation facilities complete?   Yes   No If No, describe the status of completion. |
| Are the common elements leased to or by the Homeowner's Association?   Yes   No   If Yes, describe the rental terms and options. |
| Describe common elements and recreational facilities. |

Vegas Valley Appraisals
EXTRA COMPARABLES 4-5-6

File No. 763B2305
Case No.

Borrower MIER
Property Address 2305 Cashmere Way
City Henderson    County Clark    State NV    Zip Code 89074
Lender/Client Piet & Wright    Address 3130 S. Rainbow Blvd #304, Las Vegas, NV 89146

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | +(-) $ Adjustment | COMPARABLE SALE # 5 | +(-) $ Adjustment | COMPARABLE SALE # 6 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 2305 Cashmere Way Henderson, NV 89074 | 205 Glendon Street Henderson, NV 89074 | | | | | |
| Proximity to Subject | | 0.65 miles SW | | | | | |
| Sale Price | $ | $ 249,999 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 89.83 sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | MLS#956289 | | | | | |
| Verification Source(s) | | Contract 07/31/09 Est. Cls. 10/10/09 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | DOM - 18 | | | | | |
| Concessions | | LP/SP | -12,500 | | | | |
| Date of Sale/Time | Time Adjustments | | | | | | |
| Location | Average | Average | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 6,007 SF | 7,282 SF | -1,000 | | | | |
| View | Residential | Residential | | | | | |
| Design (Style) | 2 Story | 2 Story | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Actual Age | 9 yrs | 10 yrs | | | | | |
| Condition | Average | Average | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 9  4  2.75 | 9  4  2.75 | | | | | |
| Gross Living Area | 2,783 sq. ft. | 2,783 sq. ft. | 0 | sq. ft. | | sq. ft. | |
| Basement & Finished Rooms Below Grade | None | None | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | FWA/Cent Ht/AC | FWA/Cent Ht/AC | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | |
| Garage/Carport | 3 Car Garage | 3 Car Garage | | | | | |
| Porch/Patio/Deck | Ext. Amenities | Similar | | | | | |
| Fireplaces | 1 Fireplace | 1 Fireplace | | | | | |
| Fence, Pools, etc. | No Pool | Pool | -10,000 | | | | |
| Interior Upgrades | Upgrades | Similar | | | | | |
| Net Adjustment (Total) | | + [X] - | $ -23,500 | + - | $ 0 | + - | $ 0 |
| Adjusted Sale Price of Comparables | | Net Adj: -9% Gross Adj : 9% | $ 226,499 | Net Adj: 0% Gross Adj: 0% | $ 0 | Net Adj: 0% Gross Adj: 0% | $ 0 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No prior sale within 3 years | Pending Close of Escrow | | |
| Price of Prior Sale/Transfer | N/A | N/A | | |
| Data Source(s) | MLS, Tax Records | MLS, Tax Records | | |
| Effective Date of Data Source(s) | 09/25/2009 | 09/25/2009 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales  Comparable Sale No. 4 is a similar property to the subject and it was added as a supplemental data in support of the final value conclusion.

Summary of Sales Comparison Approach

Vegas Valley Appraisals
Uniform Residential Appraisal Report

File No. 763B2305
Case No.

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Vegas Valley Appraisals  
Uniform Residential Appraisal Report  
File No. 763B2305  
Case No.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Michael O'Connor | Name |
| Company Name Vegas Valley Appraisals | Company Name |
| Company Address 2634 Cimarron Cove Ct, | Company Address |
| Las Vegas, NV 89156 | |
| Telephone Number Tel:(702) 459-6655  Fax:(702) 459-2755 | Telephone Number |
| Email Address vegasvalleyappraisals@cox.net | Email Address |
| Date of Signature and Report 09/27/2009 | Date of Signature |
| Effective Date of Appraisal 09/25/2009 | State Certification # |
| State Certification # | or State License # |
| or State License #  A.0006146-RES | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  NV | |
| Expiration Date of Certification or License 09/30/2009 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 2305 Cashmere Way | Date of Inspection |
| Henderson, NV 89074 | ☐ Did inspect interior and exterior of subject property |
| | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 221,000 | |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name Piet & Wright | ☐ Did not inspect exterior of comparable sales from street |
| Company Address 3130 S. Rainbow Blvd #304 | ☐ Did inspect exterior of comparable sales from street |
| Las Vegas, NV 89146 | Date of Inspection |
| Email Address | |

# Exhibit 3

B6D (Official Form 6D) (12/07)

In re  Richard Anthony Mier,  
      Jeannie Gay Mier

Case No. __09-25863__

Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

    List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

    If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

    Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community H / W / J / C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxxx2877<br><br>Huntington Natl Bk<br>Attention: Bankruptcy<br>2361 Morse Road<br>Columbus, OH 43229 | | C | Opened 5/01/08 Last Active 4/13/09<br>2008 Chevy Malibu.<br>Location: 2305 Cashmere Way, Henderson NV<br>Value $ 15,467.00 | | | | 27,883.00 | 12,416.00 |
| Account No. xxxxxxxxxxxx1998<br><br>Wells Fargo Bank Nv Na<br>Po Box 31557<br>Billings, MT 59107 | | C | Opened 9/01/07 Last Active 3/23/09<br>Second Mortgage<br>2305 Cashmere Way, Henderson, Nevada 89074<br>Single Family, 4 bedrooms, 3 bathroom, 2,783 sqft<br>Value $ 221,000.00 | | | | 34,893.00 | 34,893.00 |
| Account No. xxxxxxxxx0602<br><br>Wells Fargo Home Mtg<br>Attention: Bankruptcy Department<br>MAC-X<br>3476 Stateview Blvd.<br>Fort Mill, SC 29715 | | C | Opened 9/01/07 Last Active 4/01/09<br>first mortgage<br>2305 Cashmere Way, Henderson, Nevada 89074<br>Single Family, 4 bedrooms, 3 bathroom, 2,783 sqft<br>Value $ 221,000.00 | | | | 369,591.00 | 148,591.00 |
| Account No. | | | Value $ | | | | | |
| __0__ continuation sheets attached | | | Subtotal<br>(Total of this page) | | | | 432,367.00 | 195,900.00 |
| | | | Total<br>(Report on Summary of Schedules) | | | | 432,367.00 | 195,900.00 |